the council available for the next case, which is 15-20-12-12 straight path IP group Inc. May it please the court, regardless of how this court construes process, all of the challenged claims require the ability to determine that that process is connected to the network. The prior art here expressly admits that the disclosure in column 5 is not even claimed by claim 1, for example, which is representative of the subject matter. The real disclosure is in figure 8, and it's supporting disclosure in column 10, and very specifically in column 6, lines 1-16. Do you agree, then, you lose if the description in column 5 is a description of this claim? No, it is part of the primary protocol embodiment, Your Honor, but timestamping is not expressly claimed in claim 1, for example. It's something that may be, as the language of the disclosure says, part of the disclosure, but it's not required. And if it is part of the system, no one disputes that timestamping will provide some evidence of whether something is online or not offline. But what the server and the program, the computer program, are required to do is disclosed in column 10 and column 6. Most specifically, Your Honor, I don't dispute that in column 5, for example, it describes that both the first processing unit and the second IP address processed by the database and established as active and online. But critical to the 704 system, as opposed to the prior art, is a disclosure in column 6, which says when the process goes offline, it has to communicate that to the server. The server is obliged and required to update that status by either deleting that information of that process or flagging it of offline, and then in lines 1-3 of column 6... I'm having difficulty understanding what you're saying. There's this description in column 5 of a database, and when you log on, it's reflected in the database. When you log off, it's reflected in the database. And by checking the database, both relatively current information as to whether the process or whatever it is is available, right? That's absolutely true, if that becomes part of the system, Your Honor. All right, but are you saying that's not what's meant in the claims here? When it uses language about currently available or whatever it is? It is connected, Your Honor. Yes, that is what I'm saying. It is the actual language employed by the patentee to describe what temporal requirement exists in the claim. And column 6 teaches us what exactly that means. It means that when, again, Your Honor, when the process goes offline, there has to be a mechanism, and the example used in the disclosure is to provide a data packet, essentially a message from that process to the connection server saying, I'm offline. And then the disclosure teaches us what... Where do I find this in column 6? Column 6, lines 1-16, Your Honor, and specifically... Let me just pull it up here. Line 6-8. Line 6, you could even go to line 15, Your Honor. When a user logs off or goes offline from the Internet, so log off is graceful, goes off is not graceful, the connection server updates the status of the user in the database. For example, by removing the user's information or by flagging the user as being offline. Well, how is that inconsistent with the description in column 5? It's, again, determining availability by looking at the database. Because it's doing it real-time. Now, remember, this patent is directed at facilitating real-time communication. When the first process wants to communicate point-to-point, it's asking the server to confirm that that party is online, and because dynamic addresses can be assigned and reassigned, it's saying to confirm that it's online at that moment and it's online at that address. So, you see, the database at that moment has to be able to make that binary decision, Your Honor, because if you look at lines 1 through 3 of column 6, it says, if the callee is not online, when the connection server determines the callee's status, then the server is obliged to send an offline signal or message to the first processing unit. So, it's not about whether at some earlier moment in time that second callee process was online or at any other time other than when the first process says to the server through the program code, I want to communicate with my peer. I'm Skype on computer 1. I want to communicate with someone using the Skype process on computer 2. Please tell me if they're online, and if so, give me the presently assigned dynamic address. So, that binary decision has to be made by the server then, because the connection server under the patent is required to do a different thing based upon its decision and determination. So, let me just ask you, if we were to disagree with you on that and say that column 5 in the relatively current language describes what the scope of the claims is here and that the PTO got the claim construction correct. I know you disagree with me, but just assume that. Do you agree that that is shown in the prior art, particularly the WINS prior art? No, Your Honor, because what the prior art at Appendix Site 1308, for example, expressly tells us is it does not query the status of anything. What it tells us is that... It does establish a database, right? It does. And the database shows availability, right? It's somewhat out of date, but it shows availability, right? No, Your Honor. Or not available. It does not, Your Honor. What it does, Your Honor, at page 51 of the WINS disclosure, for example, which is the implementation of the NetBIOS name service, it explains to you that it only has two aspects. It does registration and resolution. All it cares about is allowing the resources on the network to a computer, a node, to claim a name, say, I want to be Bob. Can I be Bob? And determine whether there's a conflict. That's the registration. That's what gets populated in the database. And then it resolves that what IP address is to be associated with that. That mapping information is put into that database. All that ever does is store that information. And 1308 is critical, Your Honor, because it says, a query in that system is a query that says, please return that last name to IP address mapping. That's all it does. That's what 1308 tells us. You make the query. Quote 1310 at the top talks about whether WINS is enabled or not. When a computer is shut down properly, it releases its name to the WINS server which marks the related database as released. How is that different from what's described here in column five? It's totally different, Your Honor, because in this system there's absolutely no correlation in the release mechanism and whether you're actually online. And, again, the 704 patent is about determining. If it's released, you're not online, right? Excuse me, Your Honor? If it's released, you're not online, right? No, you can release and be online, Your Honor. That's actually a great question. Well, it says if it's shut down properly, it's released. If it's shut down properly, it's not online, right? That's not correct, Your Honor. I just want to get the proper site for you. Your Honor, the references describe two circumstances which demonstrate my point. First, the NetBIOS system and the WINS implementation can be online and have released or set the release flag, have released that name, and that's Appendix Site 1115. Similar to the NetBIOS… That's the language that I read you. I don't understand. It says whenever a computer is shut down properly, it releases its name to the WINS server, which marks the related database entry as released. So if you look at the database, it shows released. It means the computer was shut down. Your Honor, first of all, two points. It doesn't do that immediately. As the references show, it can be up to several hundred, 400 hours of delay before it does that because the system doesn't care about online status. So there's no immediacy to that. I do concede that ultimately the database will reflect the effort to release the name. But the point I'm trying to make is the point that 1308 makes expressly. It says I'll give you the valid mapping, but that cannot be relied upon to tell you whether or not the device associated with that mapping information is currently online. It expressly tells you that because it can't do it. The system doesn't do it. And the point I was making by referencing… That's not the question I was asking. I was saying if we accept the claim construction of the board and the notion that the scope of the claim is described in Column 5 and a relatively current, I'm asking you, isn't that shown in WINS in this language? I understand your argument that it has to be real-time. It has to be current. And that the WINS system is not real-time, right? And there doesn't seem to be any dispute about that. But if the scope of the claim is defined by Column 5, why isn't that shown in WINS? Because, Your Honor, it's not disclosing anything about the process. It never does. So the NetBIOS system, there is nothing in there. Again, if I have Skype on Computer 1 and I have Skype on Computer 2, that's the process that wants to be the caller and the callee. Nothing about that disclosure in Column 5 would ever tell you amongst the multitude of processes that are running on either of those nodes whether that process ever logged on or ever logged off. And that's the critical distinction, Your Honor. So ultimately, even if it were otherwise, again, you would still have to reverse the error in the remaining claim construction because it's not contested anywhere that the prior art system can do this necessary determination of present status. Can I just ask you, do you make the argument in your blue brief that accepting the board's construction of the claim phrase is connected to the network that the board was wrong about anticipation and obviousness? Put aside the whole process business. I don't remember that argument. I thought your entire argument about that claim phrase was that the board got the claim construction wrong and under the correct one, you can't find anticipation or at least that has to be reconsidered under the right claim construction. There is an argument, Your Honor. But do you make the argument that if the board is right, that is doesn't really mean is. It could mean whatever is still in the registration database, that there is no anticipation. Yes, Your Honor. Again, because where do you make that argument? Well, Your Honor, I make it with respect to the argument process. Okay. I wanted to put that aside. Okay. I appreciate that, Your Honor. So you do not argue that you win under the board's claim construction? Your Honor, the board never. Answer my question. I say that you're still required to reverse. Please process aside. Yes. You do not argue that you would win under the board's claim construction? Of connected to the computer network, Your Honor? Yes. I would win under that, Your Honor. But you just admitted you didn't make that argument in your brief. I appreciate that, Your Honor. I mean, the issue is part of the problem, if I could just take a lens out. I ultimately will concede that point to you to get to really what the heart of it is. Again, we're accepting the invitation provided by SIPNF below, which the board, you know, regrettably accepted, where we're only talking about three lines of disclosure in the specification. The claim language itself, which the clear guidance of this court has directed us to, tells us what the proper construction should be. But that's your claim construction argument, and, you know, that's one argument, and there's a lot that you have said in support of it, and criticism of the role of Column 5. But just to be clear, I don't think in your blue brief you ever said, putting aside the process argument, accepting the board's construction of the claim phrase is connected to the computer network, that, nevertheless, the board's conclusion of invalidity has to be reversed. Well, Your Honor, the answer I can give you is that what we noted is that the board never actually construes the term here again. What it does, while it doesn't communicate ever expressly what the claim construction is, it says, for whatever it is... We're trying to understand what you're arguing. You need to be helpful to us about that. I appreciate that. We understand the claim construction argument, but we don't understand that you ever argued in the brief that under the board's claim construction, you win. And you're not making that argument? I will concede that point, Your Honor. Okay, thank you. Your Honor, with the remaining time, I think I just want to give a notion of the two critical elements of the flawed claim construction process that demonstrate how it came to the reversible and erroneous construction. First, it decided to isolate and construe in a vacuum this connected-to-the-computer-network phrase without actually, as the patent owner had consistently urged here and in the earlier 2010 re-exam, to consider all the language of the critical second and third limitations together. Your Honor, it does fundamental injustice to the claim construction guidance provided by this court to look at that phrase disconnected from the integral language around it, and most specifically, the word is, which expressly appears in the claim. Is must be included in a consideration of how to construe connected, and the board simply refused to do that. Second, Your Honor, what we've been talking about, on page six of the final written decision in appendix six, the board makes clear all it does to find its claim construction is to rely upon three lines of disclosure from column five. Again, that's not even where it looked, but that selective and incomprehensive review of the specification and disregard for the actual claim language results in the error. Had it looked at column six, had it looked at figure eight and column ten, it would have come to a different conclusion, Your Honor. Mr. Widorsky, I think we're out of time here. Thank you, Your Honor. We'll give you two minutes. I appreciate that. Thank you. Mr. Prezad, am I pronouncing that correctly? Prezad. Prezad. Correct. Yes, thank you. So we've got a claim construction issue. Tell us why you think the board was correct. The board's construction of the term connected to the network was correct because they followed the steps. They first looked at the claims themselves, the entirety of the claim. They then turned to the specification. When you look at the claim, even if you accept my friend's argument that you need to give meaning to the word is, you still don't get their interpretation because the claims don't require, there's no actual requirement in the claim. You'll find nowhere that the second process is online when the first process makes its query or that the second process is online when the first process makes its query. Explain that to me. I guess I keep reading the language of the claim, and I'm not particularly fond of conclusions about plain meaning, but I am struggling to find the slightest doubt in this for transmitting a query as to whether the second process is connected to the computer work. I just do not see how that means anything other than asking the question, are you now, when you get this query, connected to the network? Yes. You're talking about claim one? Yes. Yes. Claim one, it's a program product claim, and in the preamble it recites the first process that's executing. Then where it talks about connected to the network, it's program code for transmitting to the server a query as to whether the second process is connected to the network. Right. What I'm trying to ask the server is the callee. Yes. Right then and there connected to the network. So you go to the next step, which is what the board did. You look at what connected to the network means in the context of the specification. Right. It cited one thing. It didn't even cite what I thought was actually the most interesting thing of column five. It cited the thing that says when a device connects to the server, the server puts in its database, you're active. Yes. That doesn't mean that an hour from now you're active. So, so what? And that's what the board, that's the conclusion the board came to. Right, and that's what my question, so what, goes to. The fact that the spec says when somebody registers with the server, they are at that moment active and online, doesn't tell me anything about whether an hour or two days or three days from now, they're still active and online. The database would have to be kept up to date by doing what's in column six. It's kept up to date by doing what's in column six, but that's imperfect. But again, again, what the claim requires is merely that you transmit a query as to where you're at, whether you're active or not. The straight path construction is that at that time when that query is transmitted and then when it's received, the first process is also active. They require an absolute requirement that the first process is online when the second process is queried and when it gets its result back. Claim one doesn't require that. I'm sorry.  One of the things that I mentioned in its claim construction was that this particular language, what is that, the third element of this claim, program code for transmitting to the server a query as to whether the second process, the callee is connected to the computer network, doesn't actually require that the information that comes back say whether the callee is connected to the computer network, only that it is, with air quotes, connected to the network in the sense that the server has in its database a line that says they're connected even if that line is currently false. That's correct because that's what the patent describes. When the patent describes, when they're using the claim terms connected to the computer network, the patent doesn't describe anything other than that the registration be in the database. Whether or not, in fact, it's online or not, it simply requires that the registration be in the database. I just am not seeing that in column five. It describes, of course, a connection server that makes a database when somebody registers and that registration means right then and there they're active and online. Correct. But then that doesn't tell you what the answer is to the question asked a day later. Yes. Are you active and online? That could be out of date. That's right and that's exactly, so you're raising a point which claim one allows for which is that these queries can be made at different points in time. In fact, when the connection server responds back that this process is connected, it may not actually be. It may have disconnected a while back. It seems to me that we have claim language that is extraordinarily plain and one would need something comparably plain in the spec to say, no, no, we don't really mean that and I'm struggling to find anything like that in column five, which merely says when a device that eventually becomes a callee signs up with the server, that the server says, okay, right then and there you're active and online. And then later there's language which the board did not rely on about a query. The query is made by, what is it, by finding the, it says, searches the database to determine whether the callee is logged in by finding any stored information corresponding to the callee's email address. Now, that's not something that the board relied on. That seemed to me to be pointing a little bit more in the direction that the board eventually ended up. But even that doesn't say that the answer, simply by asking, has to represent the information required by the claim. And it tells you in the next paragraph at the top of column six how the answer would actually represent that, namely devices check in and out. So the registry of the server is in fact current. But that doesn't mean... Does column six in fact talk about current information or is it also talking about checking a database as a surrogate for whether it's currently connected? It's merely an explanation for the structures that are described earlier. In column five. In column five. What the patent discloses is the connection server, a process will register that connection server and it will give its email address and there will be a timestamp. And that will remain in there until it either expires or it's explicitly deregistered. And so that's what column six is describing, is the operation of those structures. Right. But when column six says when the callee is not online with the connection server, when the connection server determines the callee's status, that connection server sends an offline signal or message. When a user logs off or goes offline from the internet, the connection server updates the status of the user in the database. If that in fact happens, then the connection server's database, checked in column five, will in fact communicate the necessary information. But if that doesn't happen, it won't. That's absolutely correct and it won't necessarily happen. Because again... But this claim... Yes. It seems to me by its plain language, contemplates that that's happening if the connection server answer is going to do what the claim language requires, supply an answer to the query whether the second process is connected to the computer network. That's correct, but it doesn't... Even that interpretation, that doesn't meet what StraightPath now argues. That meets the board's construction. The board construed that... And in fact, the board's construction does not preclude the interpretation that you're giving it, the understanding that you're giving it. No, it just says that its interpretation wants to cover queries about current status in which the information that comes back is actually not about current status. And that seems to me 180 degrees up... The board's interpretation actually gives it a bit more latitude. The board's interpretation allows for... The board's interpretation simply requires that it was registered. And that's entirely consistent with the patent. The board's construction doesn't require that it necessarily be online at the time of the query. It simply requires that it had been registered. That's it. But if I understand correctly, the issue here is whether isConnected means current information that's always accurate, or whether it means checking a database as a surrogate, which may be sometimes inaccurate, but is, quote, relatively current, right? So the question is, when it says isConnected, is it talking about real-time information, or is it talking about a database? And if I read column six correctly, column six is also talking about checking a database. That's correct. Column six is merely an extension of column five. It's not describing something new. It's merely explaining the operation. What I take it to be is describing... What you say is absolutely right. It's continuing a description of a database, and then it's adding something not yet described in column five. And what it's adding is the mechanism by which the database is kept up to date. Namely, devices communicate when they drop off. Yeah, so in column five... But the board's construction, I mean, I think we agree, doesn't require that. The board's construction covers the situation when you check a database in which the information that is going to then be sent back does not accurately represent whether that device is online, just that it once was. Or that it may currently be. The board's construction... It could be either one. That's why I said it doesn't have to. It doesn't have to. That's correct. And that's the reality of the 704 patent. Claim six, column six is not describing anything that's not already understood by one skill in the art according to column five. It's not describing any new mechanism by which you can ensure that there is actually... the answer returned back is absolutely positive. Am I right in the prosecution history in the re-exam, this very point was expressed by the patentee as a ground of distinction? That's not correct. Right. So, I mean, the examiner or the re-examiner, whatever one calls the person in that status, rejected the claims and they came back and said, as discussed above with respect to the recitation of processes, having online status, NetBIOS doesn't teach that an active name is synonymous with whether the second process is connected to the network. An active name simply refers to a name that has been registered and that has not yet been deregistered, independent of whether the associated computer is or is not connected to the network. Claim one is patentable over the combination because we don't do that. We require more. Well, so that was based on an incorrect determination of the teaching of NetBIOS, which the board here actually made findings that NetBIOS actually does disclose registration of a process and of... I'm not talking about process. I mean, I thought it was quite clear that the board never answered the question, does NetBIOS disclose what their claim construction of the is-connected language would require? That simply hasn't been addressed. That was addressed. Yeah, I'm sorry, do you mean under Stratepath's current construction? Yes. But NetBIOS and WINS both disclosed that. Under NetBIOS' current construction... But the board didn't find that. No, no. NetBIOS and WINS don't disclose what their construction is because it's always checking a database which may be slightly out of date, right? That's also NetBIOS and WINS. Yeah, that's what I'm saying. So under their construction, if it's correct, the prior art doesn't show that. Well, so under their construction... Yeah, right. Well, not necessarily because under their construction, what you have is a system that when it checks, that the answer is accurate. And NetBIOS and WINS can both do that. There are times that when a node checks, that the answer they get back is accurate. Of course, most of the time it's accurate. It may be inaccurate sometimes, but what Column 5 says is it's relatively current, which leaves some room for inaccuracy. Correct, correct. Yes. Anything further? Okay. So it looks like I've got another minute or so. I didn't hear any discussion in my friend's opening argument about the term process. There's no dispute there. There's substantial evidence under the claim construction advocated by Straight Path to affirm the decision on that. Also, on the connected to argument, that language that they're seeking construction of, it's only in three of the independent claims, 133 and 38. It doesn't pertain to the other three independent claims. Okay. Thank you. Thank you, Mr. Fraser. Mr. Wodarski, you've got two minutes here. Thank you. I'll try and make two quick points and then sum up, Your Honor. First, following on our earlier discussion, Judge Dike, and the conversations you just had with the opposing counsel, relatively current, this notion of relatively current, it's important to note that it's not in the board's construction. The board's construction is that once a process goes online at registration or login, it is active and online and nothing else is ever required. That's it. So, under the board's construction, simply logging on and being processed by the database of the server satisfies the claim. There's no concept of relatively recent in the board's construction. And similarly, Your Honor, the term relatively current never appears in the claim language. So what that leads us to is the actual question you got to. Both systems require us to have and require us to consider the query of a database. The difference is that database in the name service of NetBIOS and the implementation in WINS doesn't provide any information about online. You could be online and the database could think you're off. There's no correlation between the two. The difference between ours, and that's why column six is so important, is that our database is obliged to keep updated so it can actually answer that question. But, again, counsel goes just to an embodiment as disclosed in the specification. No discussion of the claim language. And I want to just pick up on what Judge Toronto said about the extraordinary plain and ordinary meaning of is that's actually used in the claim. Your Honor, that's exactly it. To the earlier point, once you have ascertained the plain and ordinary meaning of is, the only thing left to do is look to the specification to see if there was a special definition otherwise or there was express disavowal by the patentee that is should be construed in its plain and ordinary way. No one argues that here. That isn't the case. The plain and ordinary language applies. So, in sum, what we're asking you to do on appeal... But you don't dispute, right, that even under your interpretation, the question of current connection is determined by checking a database, right? Checking the connection server claimed by claim one, yes. Checking a database. That's right, Your Honor. But the database, that begs the question of what the database, what information it has. Is the difference in your invention that the database has to be updated when somebody logs off? Absolutely. And I say that for two simple reasons. One, is requires it and that's the actual language used by the patentee. And column six and column ten, including figure eight, tell you that that's the teaching of the disclosure as well. So, in essence, Your Honor... Under your claim construction, the database has to be always accurate. It cannot be ever inaccurate. Fair? Again, accurate is not the term. What it has to do is, we know two things... Accurate as to the online status. Yeah. It has to be accurate for the purpose of the invention. Always accurate. Within the meaning. It has to be able to facilitate the real-time communication. What they've tried to impose upon that... Why... Please try to respond to my question. Under column five, and the prior arc, the database may sometimes be inaccurate because something happened which wasn't reflected in the database. Your view is, the database must always be accurate. And that's the difference between you and the prior arc. Correct? That is correct, Your Honor. We must be accurate. You have to be able to say present or current status. I just... At the time of the query and the query... Exactly. Who knows when? That's all the system cares about. The process one wants to talk to its peer. Process two... So, in sum, Your Honor, they stripped the word is from the claim language. We're just asking you to put it back, give it its plain and ordinary meaning, and that requires reversal. And so we would ask, Your Honor, that you reverse the final written decision and its conclusion... Thank you, Mr. Windarski. I think we're out of time. Thank you very much, Your Honor. Thank both counsel. The case is submitted.